UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRANKLIN MOON, personal
representative of the Estate of
Linda Sue Truax, Decedent,

        Plaintiff,        CASE NUMBER: 06-13102
                                         HONORABLE VICTORIA A. ROBERTS

v.

NORTH AMERICAN INSURANCE COMPANY,
a foreign corporation,

        Defendant.
_____/

## *ORDER GRANTING MOTION TO DISMISS*

**I.    INTRODUCTION**

This matter is before the Court on Defendant's Motion to Dismiss for lack of subject matter jurisdiction. For the following reasons, the Court **GRANTS** Defendant's motion.

**II.    BACKGROUND**

Franklin Moon ("Plaintiff") as the personal representative of Linda S. Truax's estate brings this claim for life insurance benefits. On July 26, 2002, Truax purchased a mobile home from Miracle Homes in Lapeer, Michigan. At the same time, Truax applied for credit life insurance with North American Insurance Company ("Defendant"), a Wisconsin company authorized to conduct business in Michigan.

The purchase price and initial amount of the life insurance policy was $72,445.19. The insurance application Truax completed stated, in bold red type, "I

1

understand that if I answer 'YES' to question #1, above, I have no insurance coverage." The question asked whether Truax had been treated for, or diagnosed with a variety of aliments, and Truax indicated that she had never treated for or been diagnosed with any disqualifying disorders, including but not limited to heart disease/disorder, high blood pressure, and respiratory disease/disorder. Def. Ex. 1. Further, the insurance application and the certificate of insurance given to Truax stated the terms upon which benefits might be paid. The certificate of insurance provided that if the applicant misstated her age or health status she would not be eligible for insurance under the policy and the insurance would be void with no benefits paid. Def. Ex. 1.

Truax died on July 9, 2004. Investigation by Defendant discovered that two years before she purchased the insurance policy, Truax was treated for hypertension, heart disease, and asthma. Defendant disqualified Truax from receiving benefits under the policy. Defendant also refunded the policy premium of $2,623.19 to Truax's mobile home lender.

Plaintiff filed suit to recover benefits owed under the policy. Defendant's motion to dismiss asserts that this Court lacks subject matter jurisdiction.

### III.    STANDARD OF REVIEW

The standard of review applicable to a Rule 12(b)(1) motion to dismiss based on lack of subject matter jurisdiction depends on the nature of the motion. For a "facial attack" arguing an absence of subject matter jurisdiction under Rule 12(b)(1), the pertinent standards for review are those identified in *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134-35 (6th Cir. 1996); the district court must assume that the plaintiff's allegations are true and construe them in a light most favorable to the

2

plaintiff. *Id.* Then, relief is appropriate if, it is apparent to the district court that there is an absence of subject matter jurisdiction. *Id.*; *see also United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). When responding to a facial attack on subject matter jurisdiction, the plaintiff's burden is not onerous. *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996). The plaintiff can "survive the motion by showing any arguable basis in law for the claim made." *Id.*

## IV. APPLICABLE LAW AND ANALYSIS

Defendant argues that: (1) Plaintiff's claim does not exceed $75,000, exclusive of interest and costs necessary to meet the jurisdictional amount required for diversity jurisdiction; (2) Arizona law is inapplicable and may not be used to state a claim of breach of bad faith or to include punitive damages to meet the jurisdictional amount; and (3) pursuant to the terms of the insurance policy, Plaintiff's claims are subject to binding arbitration.

### A. Choice of Law

The parties disagree on the law applicable to this dispute. Thus, before deciding whether Plaintiff's claims meet the jurisdictional amount required or whether the parties must submit to arbitration, the Court must answer the threshold question: does Michigan or Arizona law govern? Defendant maintains that Michigan law applies, while Plaintiff argues for the application of Arizona law.

In diversity cases, federal courts must apply the substantive law of the state in which the court sits, including that state's choice of law rules. *Mill's Pride, Inc. v. Continental Ins. Co.*, 300 F.3d 701, 704 (6th Cir. 2002). Both parties agree that Michigan choice of law rules apply. However, Plaintiff claims that Michigan choice of

3

law rules applicable to tort and contract disputes apply. To the contrary, Defendant argues that because Plaintiff's claim involves the validity and interpretation of an insurance policy, the Court must look to choice of law rules applicable to contract disputes, and apply Michigan law uniformly to all claims.

Count I of Plaintiff's Complaint alleges breach of contract and Count II states a claim of "insurance bad faith," a tort claim that is recognized under Arizona but not Michigan law.

An insurance claim is a contract dispute. *Nat'l Guardian Risk Retention Group, Inc. v. Illinois Emergency Physicians, LLP*, No. 1:06-cv-247, 2006 WL 189259, *4, fn.3 (W.D.Mich. July 10. 2006)(noting that Michigan choice of law rules in tort cases are inapplicable to insurance claims). Michigan choice of law rules – in contract disputes – require courts to examine the factors articulated in sections 187 and 188 of the Second Restatement of Conflict of Laws, with an emphasis on the expectations of the parties to the contract and the relevant contacts and policies of the interested states. *Chrysler v. Skyline Indus. Serv., Inc.*, 448 Mich. 113 (Mich. 1995); *see also Mill's Pride*, 300 F.3d at 705 (stating that the *Chrysler* decision is the controlling authority in Michigan on choice of law issues involving contract disputes). Prior to *Chrysler*, "[t]he predominant view in Michigan [was] that a contract is to be construed according to the law of the place where the contract was entered into." *Chrysler Corp.*, 448 Mich. at 233. Defendant argues this rule should apply.

But in *Chrysler*, the Michigan Supreme Court held "the rigid 'law of the place of contracting' approach has become outmoded in resolving contract conflicts. Rather, §§ 187 and 188 of the [Restatement (Second) Conflicts of Law], with their emphasis on

4

examining the relevant contacts and policies of the interested states, provide a sound basis for moving beyond formalism to an approach more in line with modern-day contracting realities." *Id.* at 124.

Section 187 of the Second Restatement of Conflicts is not pertinent here since it addresses the validity of contractual choice of law provisions. The insurance policy at issue does not contain a choice of law provision. Section 188 does apply:

> (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transactions and the parties under the principles stated in § 6.[1]
>
> (2) In the absence of an effective choice of law by the parties, the contacts to be taken into account in applying the principles of 6 to determine the law applicable to an issue include:
> (a) the place of contracting,
> (b) the place of negotiation of the contract,
> (c) the place of performance,
> (d) the location of the subject matter of the contract, and
> (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

Further, section 192 of the Restatement specifically provides that in cases involving insurance contracts the law of the state where the insured is domiciled applies.

---

[1]Section 6 provides:
(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include:
(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum;
(c) the relevant policies of other interested states and the relative interests of those states in determination of the particular issues,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.

This section states:

> The validity of a life insurance contract issued to the insured upon his application and the rights created thereby are determined, in the absence of an effective choice of law by the insured in his application, by the local law of the state where the insured was domiciled at the time the policy was applied for, unless, with respect to the particular issue, some other state law has a more significant relationship under the principals stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

Defendant is a Wisconsin corporation, but Truax was a resident of Michigan when the policy was executed. Michigan has an interest in applying its laws to insurance contracts executed within its borders by its residents and section 192 applies here.

Nonetheless, Plaintiff argues that Arizona law governs, relying on the assertion that Defendant's decision to deny the claim was initially made in Arizona and confirmed in Nebraska. The Court agrees with Defendant that this connection is too tenuous to apply Arizona law. Even a cursory review of the relevant factors demonstrates that Michigan is the state which "has the most significant relationship to the transaction and the parties" and, thus, its laws apply to Plaintiff's breach of contract claim.

With respect to Plaintiff's breach of bad faith claim, Plaintiff argues that because Arizona is the place where Defendant initially denied benefits, Arizona law should govern. Plaintiff presents no authority for this position.

Under Michigan choice of law principles, Michigan law will apply in tort actions unless a rational reason to do otherwise exists. *Sutherland v. Kennington Truck Serv. LTD*, 454 Mich. 274, 287 (Mich. 1997). In determining whether such a reason exists, the court undertakes a two-step analysis: first, it determines if any foreign state has an

interest in having its law applied. If no state has that interest, the presumption that Michigan law applies cannot be overcome. If the foreign state does have an interest in having its law applied, the court must then determine if Michigan's interest mandates that Michigan law be applied, despite foreign interests. *Id.*

Plaintiff alleges a breach of bad faith claim arising in Arizona. Under Arizona law, an insured has a bad faith claim if the insurer refuses to pay benefits without a reasonable basis. *Noble v. Nat'l Am. Life Ins. Co.*, 128 Ariz. 188 (1981); *see also Knoell v. Metro. Life Ins. Co.*, 163 F.Supp.2d 1072, 1075 (D.Ariz. 2001)(stating that "when there is a question of fact as to liability on the underlying [insurance] policy, then as a matter of law, the insurance company is not liable for bad faith.").

Plaintiff concedes there is no independent cause of action for breach of bad faith under Michigan law. *Int'l Harvester Credit Corp.*, 695 F.2d 231, 234 (6th Cir. 1982)(noting that under Michigan law, a bad-faith breach of an insurance contract does not create an independent and separable tort action). This, he argues, is all the more reason that Arizona law should apply so that he can assert bad faith as a stand alone claim. The relevant inquiry, however, is whether Arizona has an interest in Plaintiff's claim.

What would be the rational justification for displacing Michigan law? Neither party is a resident of Arizona. While Defendant maintains an office in Arizona, it is neither its only office or principal place of business. In a sworn affidavit, Diane Smith ("Smith"), Credit Claims Manager for Defendant, attests that Defendant is a Wisconsin corporation and it conducts all of its insurance operations from its headquarters in Middletown, Wisconsin. Def. Ex. 5. She admits that some administrative functions are

carried out in Arizona, but notes that Defendant does not sell insurance there. According to Smith, Defendant only carries out administrative functions in Arizona, Nebraska, and Louisiana. Regarding Truax's claim, Smith explains that she preliminarily denied the claim while she was working in Arizona and the final decision was made in Nebraska.

Plaintiff's arguments that Arizona is the place where the wrong is tenuous at best. Defendant denied Truax's claim in an Arizona office; it was then sent to Nebraska for final approval before presumably reaching Truax's mailbox. If the Court adopted Plaintiff's reasoning, Nebraska would also have an interest in applying its law because the alleged "tortious conduct" occurred there as well. This approach was rejected by the Supreme Court in *Allstate Ins. v. Hague*, 449 U.S. 302 (1981). In *Allstate Ins.*, the Court held that "[a] State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary or fundamentally unfair." *Id.*

Only an initial decision to deny benefits was made by Defendant's agent in Arizona. Arguably, the tort also occurred in Michigan when Plaintiff received the denial letter.

Importantly, Michigan as the forum state has a significant interest in protecting the rights of its citizens. *Chrysler*, 448 Mich. at 124 (the "forum state has an interest in seeing that its injured citizens are well served."). Contrary to Plaintiff's assertions, Michigan's lack of a breach of bad faith claim in the insurance context does not indicate a lack of interest in protecting injured citizens. Each state may determine the statutory scheme and remedies available for wrongs committed within its borders. In this case,

8

Michigan determined that a claim for breach of contract is the exclusive redress for those in Plaintiff's position.

Without more than an initial decision to deny benefits made in Arizona, there is no rational reason to displace Michigan law; Plaintiff fails to overcome the presumption that Michigan law will apply.

Therefore, the Court will apply Michigan law to Plaintiff's breach of contract and breach of bad faith claims. Because Michigan does not recognize a cause of action for breach of bad faith by insurance companies, that claim is dismissed.

### B. Amount in Controversy

Next, the Court must determine whether Plaintiff's damage claim meets the necessary jurisdictional amount. In diversity cases, federal law provides district courts with original jurisdiction of "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332. "[T]he sum claimed by the plaintiff controls if the claim is apparently made in good faith." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 156 (6th Cir. 1993). A district court must not dismiss on jurisdiction grounds unless it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount." *Klepper v. First Am. Bank*, 916 F.2d 337, 340 (6th Cir. 1990). Whether the jurisdictional amount has been met is considered in light of the state law and its recognition of relief sought. *Id.* at 341.

The death benefit amount of $72,445.19 is below the statutory floor of $75,000. It appears that when Truax purchased the mobile home in 2002 she took out a loan along with the insurance policy. The insurance policy provided that if Truax died or

9

became disabled during the term of the insurance contract, Defendant would pay the entire outstanding balance on the mobile home as of the date of disability or death. According to Defendant, Truax misstated her health status and, therefore, she was not entitled to benefits. Defendant returned the premium to her in accordance with the terms of the policy and did not pay the outstanding balance on the mobile home.

Plaintiff asserts that because Defendant did not pay off the mobile home and he continued to make payments, which mostly consisted of interest, he is entitled to include those payments in his damage amount. According to Plaintiff, the loan was for twenty years at 9.5% interest per year on a principal of $72,455.19. Plaintiff estimates that in the two years following Truax's death he paid approximately $12,000 and, therefore, his claim exceeds the jurisdictional amount. In addition, Plaintiff relies on his claim for punitive damages to meet the jurisdictional amount. Generally, punitive damages are includable in the amount in controversy calculation when they are an available remedy. *Klepper v. First Am. Bank*, 916 F.2d 337, 341 (6th Cir. 1990). The Court's application of Michigan law, however, precludes Plaintiff's punitive damage claim which arose out of the breach of bad faith claim that is dismissed.

Defendant argues that the loan amount should be excluded from the amount in controversy because the death benefit – not the loan – is at issue. Moreover, Defendant asserts that interest paid on a loan is excluded under § 1332 because it is the result of a delay in payment. Defendant relies principally on *Velez v. Crown Life Ins. Co.*, 599 F.2d 471, 473 (1st Cir. 1979), a First Circuit decision which held that a party may not include interest arising from delay in calculating the jurisdictional amount in controversy. *Id.* ("it makes no difference whether the interest which is sought

accumulated upon the principal obligation sued upon because of contract, or by common law, or by statute, or whether the interest be termed a penalty or damages, so long as it is an incident arising solely by virtue of a delay in payment.") On the otherhand, Plaintiff relies on *Parris v. Mego Mortg. Corp.*, 14 Fed.Appx. 394 (6th Cir. 2001), which held that unincurred and unaccrued interest charges that might accumulate over the life of the loan could be included in the calculation of the amount in controversy. Neither case is instructive.

Although it is true that section 1332 precludes the inclusion of interests or costs in calculating the amount in controversy, interest is included when it is an essential ingredient of the principal claim. *See Brown v. Webster*, 156 U.S. 328 (1895). In *Brown*, the Supreme Court drew the distinction between "interest as such," which should be excluded from the jurisdictional amount computation, and "the use of an interest calculation as an instrumentality in arriving at the amount of damages to be awarded on the principal demand." *Id.* at 329.

Courts interpret *Brown* to hold that where the judgment is based on both principal and interest, or the interest calculation is instrumental in arriving at the amount of damages to be awarded on the principal demand, the amount in controversy requirement is satisfied because the interest is part of the "entire damage claimed." *See Grunblatt v. UnumProvident Corp.*, 270 F.Supp.2d 347(E.D.N.Y. 2003)(noting that the "Second Circuit has interpreted the Supreme Court's jurisprudence on this issue as resting on the notion that when interest 'is owed as part of the underlying contractual obligation[,]' it is part of the principal claim."); *Brainin v. Melikian*, 396 F.2d 153, 155 (3d Cir.1968)( holding that interest accruing on $10,000 note before maturity was not

incidental to main obligation but integral part of total obligation and was thus properly included in determining jurisdictional amount in diversity action on note). "It is generally agreed in this circuit that the amount in controversy should be determined 'from the perspective of the plaintiff, with a focus on the economic value of the rights he seeks to protect.'" *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 376 -377 (6th Cir. 2007).

Thus, the question for the Court is whether the component of damages alleged is properly characterized as "interest." *Meding v. Receptopharm, Inc.*, 462 F.Supp.2d 348 (E.D.N.Y. 2006)("[T]o determine whether a claim is fairly characterized as interest, the Court needs to start with the Supreme Court's recognition of interest as an 'accessory' to principal, and then look to the totality of the circumstances of the obligation.").

Plaintiff's claim does not simply seek unpaid interest as an "accessory demand," but rather as a "principal demand." *Brown,* 156 U.S. at 329; *see also Transero, Inc. v. La Fuerza Area Boliviana*, 24 F.3d 457, 461 (2d Cir. 1994)(holding that "where . . . interest is owed as part of an underlying contractual obligation, unpaid interest becomes part of the principal for jurisdictional purposes."). Plaintiff sues Defendant for failing to pay the underlying loan under the terms of the policy and his damages not only include the outstanding obligation but also reimbursement for payments made since Truax's death. Those payments which Plaintiff concedes consist mostly of interest are not merely incidental to the underlying obligation. Thus, the Court finds Plaintiff's case falls in line with *Brown*; the interest claimed is not the result of a delay in payment but rather, is part of the entire damage claim. With the inclusion of the estimated $12,000 in payments, Plaintiff meets the $75,000 jurisdictional amount.

### C. Arbitration

Nonetheless, Plaintiff's claim must be dismissed. Defendant requests the Court to dismiss Plaintiff's complaint because the insurance policy contains an arbitration provision. The Certificate of Insurance provides:

> All claims and disputes arising under this Application and/or Certificate shall be submitted to binding arbitration in accordance with the rules of the American Arbitration Association and the parties hereto expressly waive any right to commence any action or lawsuits for benefits hereunder other than through arbitration. Venue shall be in Oakland County Michigan for any arbitration brought for benefits hereunder.

Def. Ex. 2.

Plaintiff opposes arbitration on the grounds that his tort claim for breach of bad faith is not subject to arbitration. However, he concedes that his breach of contract claim is. Because the Court finds that Plaintiff cannot maintain a breach of bad faith action under Michigan law, Plaintiff must submit his remaining claim – breach of contract – to arbitration.

### V. CONCLUSION

For the reasons stated, the Court **GRANTS** Defendant's Motion.

**IT IS ORDERED**.

                                                S/Victoria A. Roberts
                                                Victoria A. Roberts
                                                United States District Judge

Dated: June 1, 2007

> The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on June 1, 2007.
>
> S/Linda Vertriest
> Deputy Clerk